UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Jon Edward Ham and Charles Fuentes,   )
                   )    Civil Action No. 4:15-cv-00372-RBH-KDW
          Plaintiffs,   )
                   )
      vs.            )    REPORT AND RECOMMENDATION
                   )
Thomas McFadden,       )
                   )
         Defendant.   )
_____)

      Plaintiffs filed this 42 U.S.C. § 1983 action alleging that Defendant McFadden violated their Fourth and Fifth Amendment rights during the course of their arrest and subsequent imprisonment and prosecution. Plaintiffs also bring South Carolina state law claims against Defendant for conspiracy and intentional infliction of emotional distress.[1] *Id.* at 16-18. This matter is before the court on Defendant's Motion for Summary Judgment, ECF No. 33, filed on January 8, 2016. On January 25, 2016, Plaintiffs filed a Response in Opposition to Defendant's Motion, ECF No. 35, and Defendant did not file a Reply. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), D.S.C. Because this Motion is dispositive, a Report and Recommendation is entered for the court's review. The undersigned recommends granting Defendant's Motion for Summary Judgment, ECF No. 33.

      I.     Background

---

[1] Initially, Plaintiffs brought this action against Thomas McFadden, Kenney Boone, and the Florence County Sheriff's Department. ECF No. 1. However, on February 10, 2016, Defendants Kenney Boone and the Florence County Sheriff's Department were dismissed as parties to this action in a Joint Stipulation of Dismissal. *See* ECF No. 40.

In their Complaint, Plaintiffs represent that they are licensed, professional bondsmen working in the Florence, South Carolina area. ECF No. 1 at 3. Specifically, Plaintiffs maintain they have all the necessary licenses and accreditations to act as bondsmen, "and are permitted by law to use reasonable force to effectuate arrests under S.C. § 38-53-60." [2] *Id.* Plaintiffs represent that on October 26, 2011, Plaintiff Jon Ham made an agreement with Martie Bennett to issue a bond for Joey Leon Green, Bennett's boyfriend. *Id.* After making the agreement with Bennett, Plaintiffs allege that Plaintiff Ham filed the bond with the City of Florence and then attempted to charge Bennett's credit card. *Id.* at 3. Apparently, payment was declined because Plaintiff Ham "accidentally typed in the wrong payment information, and the credit card payment did not process." *Id.* at 4. Plaintiff Ham then contacted the City of Florence and discovered that Mr. Green had acted on the bond. *Id.* According to the Complaint "[u]pon receiving such information, [Plaintiff] Ham contacted Martie Bennett to let her know that payment had not yet been made, Joey Green was not to leave town, and that Joey Green was required to sign all of [Plaintiff] Ham's paperwork." *Id.* Based on his conversation with Ms. Bennett, Plaintiff Ham believed that Joey Green had no intention of abiding by his "orders" and "was more than likely going to attempt to leave town." *Id.* Plaintiffs represent that Plaintiff Ham "decided he wanted to be relieved of the bond and found it necessary to act under S.C. § 38-53-50(b)." [3] He also learned that Joey Green's car was still impounded from the arrest. *Id.*

---

[2] Section 38-53-60 of the South Carolina Code provides: "For the purpose of surrendering the defendant, the surety may arrest him before the forfeiture of the undertaking or, by his written authority endorsed on a certified copy of the undertaking, may request any judicial officer to order the arrest of the defendant by the surety."

[3] Section 38-53-50(b) of the South Carolina Code provides: "If the circumstances warrant immediate incarceration of the defendant to prevent imminent violation of one of the specific terms of the bail bond, or if the defendant has violated one of the specific terms of the bond, the surety may take the defendant to the appropriate detention facility for holding until the court

Plaintiffs maintain they arrived at the impound lot the following morning "to arrest Joey Green and take him back to jail while [Plaintiff] Ham attempted to be relieved of the bond." *Id.* at 5. Plaintiff confronted Joey Green and Martie Bennett and allege they "requested Joey Green come with [them] peacefully." *Id.* In response, Plaintiffs allege that "Martie Bennett became hysterical, started to yell and scream at [Plaintiff] Ham, and quickly attempted to get another bondsman on the phone." *Id.* While Ms. Bennett was on the phone, Plaintiffs represent that they "attempted to obtain custody of Joey Green in a peaceful manner." *Id.* Further, Plaintiffs maintain that it was their common practice to "use the least amount of force necessary to detain a person they were lawfully permitted to arrest." *Id.* However, Plaintiffs allege that Joey Green was "completely noncompliant" and in response Plaintiff Ham took out a taser in case he needed to use it during the course of Green's arrest. *Id.*

Plaintiffs also allege that while they "were still attempting to take custody of Joey Green, Martie Bennett started to interfere with the lawful arrest of Joey Green." *Id.* at 6. Specifically, Plaintiffs maintain that "Martie Bennett began to get physical with Jon Ham in an effort to free Joey Green from [their] custody." *Id.* Plaintiffs allege that Martie Bennett wrongfully interfered with their lawful arrest of Joey Green but represent that neither Plaintiff physically touched Martie Bennett in any way. *Id.* According to their Complaint, once "Martie Bennett stopped

---

orders that the surety be relieved. The surety, within three business days following recommitment, must file with the detention facility and the court an affidavit clocked in with the clerk of court on a form provided by the Division of Court Administration stating the facts to support the surrender of the defendant for good cause. Nonpayment of fees alone is not sufficient cause to warrant immediate incarceration of the defendant. When the defendant and the affidavit are presented at the appropriate detention facility, the facility shall take custody of the defendant. When the affidavit is filed with the court, the surety also shall file a motion to be relieved on the bond pursuant to subsection (A). A surety who surrenders a defendant and files an affidavit which does not show good cause is subject to penalties imposed for perjury as provided for in Article 1, Chapter 9, Title 16."

interfering with the lawful arrest of Joey Green . . . [Plaintiffs] were able to direct Joey Green into their vehicle." *Id.* However, Plaintiffs allege that Joey Green continued resisting arrest by continuing to stick his legs outside of the vehicle. *Id.* Plaintiffs maintain that "[a]fter the difficult struggle, both [Plaintiffs] found it necessary to utilize minimal force on Joey Green's legs to make him comply with their request that he place his legs in the vehicle." *Id.* Plaintiffs allege they were finally able to "effectuate the arrest of Joey Green." *Id.* at 7.

In response to their arrest of her boyfriend, Plaintiffs allege that Martie Bennett was "extremely angry" and wanted to retaliate against Plaintiffs, so she "immediately filed a Sherriff's [sic] Report with Florence County against [Plaintiffs]." *Id.* Plaintiffs represent that the only allegations Martie Bennett made against them in the Sherriff's [sic] Report concerning their actions toward her was that Plaintiff Ham "grabbed her right hand and attempted to grab her phone that was in her left hand [and] [a]ll other allegations in the Sherriff's [sic] Report related to actions toward Joey Green." *Id.* Plaintiffs represent that on October 27, 2011, Defendant McFadden "called [Plaintiff] Ham in order to obtain his side of the story." *Id.* Further, Plaintiffs allege that Defendant McFadden "contended that he agreed with [Plaintiffs'] actions during the occurrence, told [Plaintiff] Ham not to worry about the Sherriffs [sic] Report, and told [Plaintiff] Ham that the Sherriff's [sic] Department was not going to arrest him or [Plaintiff] Fuentes. *Id.*

Plaintiffs allege "[o]n February 27, 2012, more than four months after the incident, [Plaintiff] Ham was contacted again by Defendant Officer McFadden of the Florence County Sherriff's [sic] Office." *Id.* at 8. Plaintiffs allege that Defendant McFadden informed Plaintiff Ham that "Martie Bennett was badgering him, the Sherriff [sic], and the Court of Florence County about arresting Jon Ham and Charles Fuentes (for the actions against her boyfriend) since the October 2011 incident." *Id.* Plaintiffs maintain that Plaintiff Ham "explained that

Martie Bennett was attempting to interfere with a lawful arrest, Martie Bennett became physical, and [Plaintiffs] did what was necessary to secure custody of Joey Green and protect all parties involved." *Id.* Plaintiffs represent that Defendant McFadden "contended that he believed Jon Ham, but Martie Bennett was being a 'pain in the ass' and was calling the aforementioned offices relentlessly." *Id.* Further, Plaintiffs allege that Defendant McFadden "contended he signed an Affidavit and obtained an arrest warrant for [Plaintiffs] so that Martie Bennett would 'leave the Sherriff's [sic] Office alone.'" *Id.* Moreover, Plaintiffs allege that Defendant McFadden "further contended that Magistrate Belinda Timmons, the Magistrate whom [sic] signed off on the warrant, had heard all of the information and on the issue of probable cause had stated something along the lines of 'lets just toss it to a jury and see what they decide.'" *Id.* Plaintiffs allege that Defendant McFadden asked Plaintiffs to turn themselves in because warrants "had already been issued for the offenses of Assault and Assault and Battery in the third degree." *Id.*[4] Plaintiffs assert that they "complied with the request and went to the Sherriff's [sic] Department to turn themselves in [and] were detained by the Sherriff's [sic] Department for around four hours before being released on bond." *Id.*

Plaintiffs allege that after their arrest, "the news of the arrest spread quickly through the City of Florence and the story appeared on local television and in the local newspaper." *Id.* Further, they maintain that "[s]uch wrongful charges were humiliating to [Plaintiffs] and very damaging to [their] reputation and business." *Id.* Plaintiffs allege that "[a]fter being released on bond, a case number was issued, a court date was set, and [they] found it necessary to hire an

---

[4] In their Complaint, Plaintiffs maintain that "Defendant Kenney Boone, as Sheriff of the Florence County Sherriff's [sic] Department, had a duty to oversee his Officers and the Sherriff's [sic] Department as a whole to make sure that all arrests were based on probable cause [and] [h]e did not do so in this case." *Id.* at 9. However, as previously mentioned, these Defendants are no longer parties to this action.

attorney." *Id.* at 10. Plaintiffs represent that on "July 30, 2012, the date the case was set for a hearing, both Joey Green and Martie Bennett did not appear [and] it was discovered that Joey Green had been arrested out of state for the armed robbery." *Id.* Plaintiffs represent that the case against them was dismissed on that date. *Id.* However, Plaintiffs allege that "[e]ven though the case was dismissed, the wrongful arrest severally [sic] damaged [Plaintiffs] and their business." *Id.*

In their first cause of action, Plaintiffs brought suit pursuant to § 1983 and allege Defendant McFadden violated their due process rights because he did not have probable cause to arrest them for assault/assault and battery in the third degree. *Id.* at 10. Plaintiffs assert that as licensed and professional bail bondsmen, they are permitted by section 38-53-60 of the South Carolina Code to effectuate arrests. *Id.* Further, Plaintiffs allege that "Defendant McFadden [was] aware that [Plaintiffs] were entitled to utilize reasonable force necessary to effectuate arrests." *Id.* Specifically, Plaintiffs maintain that Defendant lacked probable cause for their arrest, had an ulterior motive for arresting them, and "wrongfully arrested and charged [Plaintiffs] with crimes that they did not commit." *Id.* at 12.

Plaintiffs bring a second cause of action under § 1983 for unlawful and malicious detention and confinement. *Id.* Specifically, Plaintiff allege that Defendant deprived them of "the right to their liberty without due process of law and their right to equal protection of the laws. . . ." *Id.* at 13. Moreover, Plaintiff maintain "[t]he arrest, detention and confinement of [Plaintiffs] was unlawful and without probable cause, and [Defendant] knew [he was] restraining [Plaintiffs'] physical liberty without probable cause." *Id.*

Plaintiffs bring a third cause of action for malicious prosecution pursuant to § 1983. *Id.* There, Plaintiffs allege they were denied their right to liberty without due process of law and

equal protection of the laws. *Id.* Specifically, Plaintiffs maintain that Defendant "maliciously used a legal process to accomplish some ulterior purpose for which it was not designed or intended or which was not the legitimate purpose of the particular process employed." *Id.* Further, Plaintiffs allege that Defendant "instigated or participated in the prosecution by arresting [Plaintiffs] and applied for a complaint for an improper purpose." *Id.* at 14. Plaintiffs represent that ultimately, the charges against them were dismissed. *Id.*[5]

Plaintiffs bring a fifth cause of action for violations of due process by "(a) depriving [Plaintiffs] of their liberty without due process of law, (b) wrongfully taking them into custody, (c) conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny [Plaintiffs] equal protection of laws, and (d) refusing or neglecting to prevent such deprivations and denials to [Plaintiffs], and thereby denying [Plaintiffs] of [their] rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983." *Id.* at 15-16.

Plaintiffs bring state law causes of action for conspiracy and intentional infliction of emotional distress ("IIED"). *Id.* at 16-17. In their conspiracy claim, Plaintiffs allege Defendant "committed civil conspiracy in this action considering they were joined for the purpose of injuring [Plaintiffs] and caused special damage to [them]." *Id.* at 16. Further, Plaintiffs allege that Defendant "did overt acts against [Plaintiffs]" and "knew that by arresting [Plaintiffs] for Assault/Assault and Battery they were harming [Plaintiffs'] reputation and injuring their business as bondsman." *Id.* at 17.[6]

---

[5] In their fourth cause of action, Plaintiffs brought suit against the Florence County Sheriff's Department for deficient policies, procedures, and training that "led to [their] the improper arrest, detention, and malicious prosecution. . . ." *Id.* at 15.

[6] Within this cause of action, Plaintiffs had alleged that Defendant Florence County Sheriff's Department was liable under the doctrine of respondeat superior. *Id.*

In their claim for IIED, Plaintiffs allege that Defendant intentionally and deliberately inflicted emotional distress on Plaintiffs "by maliciously prosecuting them, or by abusing the lawful process by unlawful purpose, or by violating [Plaintiffs'] constitutional rights, or by falsely arresting and imprisoning [Plaintiffs], by conspiring against [Plaintiffs], or by interfering with [Plaintiffs'] state civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct." *Id.* at 17-18. Plaintiffs described Defendant's conduct as "extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community." *Id.* at 18.[7]

Plaintiffs seek the following damages: $50,000.00 for compensatory damages; $50,000.00 for punitive damages; interest, costs, attorneys' fees; and other relief that the court deems just and equitable. *Id.*

II.    Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his

---

[7] Similarly, within this cause action, Plaintiffs had alleged that Defendant Florence County Sheriff's Department was liable under the doctrine of respondeat superior. *Id.*

pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

III.     Analysis

Defendant McFadden asserts several arguments in support of his Motion for Summary Judgment. ECF No. 33-1. The undersigned will begin by considering the merits of Defendant's third argument to the court concerning the validity of Plaintiffs' arrest, *id.* at 6-8, and all remaining arguments in logical sequence.

A.     Implications of Facially Valid Arrest Warrants

Plaintiffs assert causes of action under § 1983 for due process violations. Defendant argues he cannot be held liable for any unlawful seizure, false arrest, and/or false imprisonment because the arrests were made pursuant to a valid arrest warrant. ECF No. 33-1 at 6. Further, Defendant represents that "[n]o genuine issue of material fact exists in this regard." *Id.* In response, Plaintiffs maintain that the arrest warrants were invalid and Defendant McFadden "knew or should have known of the invalidity of said warrants at all times relevant hereto." ECF No. 35 at 7. Plaintiffs argue that Defendant McFadden cannot assert that the warrants were facially valid because he had actual knowledge to the contrary. *Id.* Plaintiffs assert that in procuring the arrest warrants, Defendant McFadden chose to omit information concerning Plaintiffs' work as licensed bail bondsmen. *Id.* at 8. Furthermore, Plaintiffs argue that

"Defendant McFadden committed perjury and obstruction of justice by purposely avoiding and deliberately omitting material facts in his affidavit in order to secure the arrest warrant." *Id.* Plaintiffs contend that had Defendant not omitted this material fact, "the arrest warrants would not have been obtained." *Id.* at 9.

The Fourth Amendment provides in pertinent part, "[t]he right of the people to be secure in their persons. . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . . ." Consequently, "an arrest warrant must be supported by probable cause to comply with the Fourth Amendment. Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal citation omitted).

A facially valid arrest warrant provides the arresting officer with sufficient probable cause to arrest the individual identified in the warrant. *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979). Therefore, "[a] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. . . . Thus, we recognize implicitly that a claim for false arrest may be considered only when no arrest warrant has been obtained." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) (citing *Brooks v. City of Winston–Salem*, 85 F.3d 178 (4th Cir. 1996)). Here, Defendant obtained an arrest warrant, however, Plaintiffs allege that the affidavit used to secure their arrest warrant contained false statements or material omissions of facts relevant to the situation. To demonstrate that an officer seized an individual pursuant to an arrest warrant without probable cause, a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they

thereby made, the affidavit misleading." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal citations and quotation marks omitted). To demonstrate a "reckless disregard," a plaintiff must show, in light of all of the evidence, that an officer had "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* With regard to alleged omissions from an affidavit, a plaintiff must establish that the officer failed to inform the magistrate of facts that the officer knew would negate a finding of probable cause. *Id.* However, allegations of negligence or honest mistake are insufficient. *Id.* at 627–28; *see also Street v. Surdyka*, 492 F.2d 368, 373-74 (4th Cir. 1974) ("Mere negligence is not sufficient to sustain the claim under the Civil Rights Act. Defendant's activity must have been intentional or reckless, characterized by gross or culpable negligence."). Additionally, "the false statements or omissions must be material, that is, necessary to the neutral and disinterested magistrate's finding of probable cause." *Miller,* 475 F.3d at 628 (internal citations and quotation marks omitted). Notably, "obtaining an arrest warrant does not provide per se evidence" that the warrant was proper or that the officer was objectively reasonable in believing it so. *Torchinsky v. Siwinski,* 942 F.2d 257, 262 (4th Cir. 1991); *Mixson v. Metrejean*, No. CA 2:11-1369-DCN-PJG, 2012 WL 3716950, at *2 (D.S.C. Aug. 10, 2012), *report and recommendation adopted*, No. CA 2:11-1369 DCN, 2012 WL 3757371 (D.S.C. Aug. 28, 2012).

In this case, Plaintiffs were arrested pursuant to facially valid arrest warrants as signed by Magistrate Judge Belinda Timmons. ECF No. 33-6 at 1-3. One of the arrest warrants at issue for Plaintiff Jon Edward Ham contains the following affidavit:

> On or about 10/27/2011 there's witnesses and evidence to prove the same that the Defendant while at Patricks Domestic and Imports 1223 W. Evans St Florence SC in Florence County did assault the victim by grabbing her arm pulling her attempting to take her phone, this all took place during a verbal altercation about a payment for a bond for the victim's boyfriend. There were employees at the incident location who witnessed parts of the verbal altercation and assault. The

> Defendant has been identified to the exclusion of all others. This case has been
> investigated by the FCSO.

ECF No. 33-6 at 1. Defendant Thomas McFadden signed as the affiant. *Id.* Magistrate Judge Belinda Timmons signed the arrest warrant based on her finding that there was probable cause to arrest Plaintiff Ham for the offense(s) of "Assault/Assault & Battery 3rd degree" in violation of section 16-03-0600(E)(1).   *Id.* In a separate affidavit for Plaintiff Ham's arrest, Defendant Thomas McFadden attested to the following:

> On or about 10/27/2011 there's witnesses and evidence to prove the same that the
> Defendant along with codefendant while at Patricks Domestic and Imports 1223
> W. Evans St Florence SC in Florence County did kick the victim several times
> about the body while he was in handcuffs. The defendant was assisting his co-
> defendant with a bond issue during this incident. This incident was witnessed by
> the victims girlfriend along with employees at the incident location. The
> Defendant has been identified to the exclusion of all others. This case has been
> investigated by the FCSO.

*Id.* at 2. Magistrate Judge Belinda Timmons signed the arrest warrant based on her finding that there was probable cause to arrest Plaintiff Ham for the offense(s) of "Assault/Assault & Battery 3rd degree" in violation of section 16-03-0600(E)(1). *Id.* Judge Timmons signed an arrest warrant for Plaintiff Fuentes containing an identical affidavit. *Id.* at 3. Plaintiff Ham was served with the arrest warrants on February 27, 2012, for two counts of assault and battery in the third degree, and Plaintiff Fuentes was also served with the arrest warrant for one count of third-degree assault and battery. *Id.* at 14.

Plaintiffs maintain that had Judge Timmons known that they were licensed and professional bail bondmen, she would not have signed the arrest warrants.[8] It is Plaintiffs' burden

---

[8] The undersigned notes Defendant's assertion that he gave Judge Timmons verbal notification that Plaintiffs were acting as bail bondsmen during the course of Joey Green's arrest. *See* McFadden Aff. ¶ 14, ECF No. 33-3. However, the undersigned did not consider this assertion when performing the *Miller* analysis and based on the applicable standard of review that the court must view the evidence in the light most favorable to the Plaintiffs. However, undisputed

to demonstrate that the arresting officer made a material omission of fact in procuring the arrest warrant. *See Miller*, 475 F.3d at 627. Pursuant to *Miller*, to succeed on a constitutional violation claim that a warrant is not supported by probable cause, Plaintiffs must demonstrate that Defendant McFadden deliberately or with reckless disregard for the truth, made material omissions in his affidavit. *Id. Miller* instructs: "[w]ith respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he] knew that would negate probable cause.'" *Id.* (internal citations omitted). *Miller* further instructs: "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause.' If the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." *Id.* at 628 (internal citations omitted).

The undersigned finds that had the affidavit specifically indicated that Plaintiffs were licensed and professional bail bondsmen that probable cause would still have existed for their arrest based on the information contained in the affidavits. Pursuant to section 16-3-600(E)(1) of the South Carolina Code, an individual commits third-degree assault "if the person unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so." *See e.g., State v. LaCoste*, 553 S.E.2d 464, 471 (S.C. Ct. App. 2001) ("Assault is an attempted battery or 'an unlawful attempt or offer to commit a violent injury upon another person, coupled with the present ability to complete the attempt or offer by a battery.'"); *Matter of McGee*, 299 S.E.2d 334, 334 (S.C. 1983) ("The crime of assault has long been defined as an

---

evidence in the arrest warrant affidavit indicates that the alleged assault took place during a "verbal altercation about a payment for a bond for the victim's boyfriend." ECF No. 33-6 at 1.

unlawful attempt or offer to commit a violent injury upon the person of another, coupled with a present ability to complete the attempt or offer by a battery.").

Here, the affidavits indicated to Judge Timmons that evidence Defendant McFadden gathered during his investigation revealed that Plaintiff Ham assaulted Marie Bennett "by grabbing her arm pulling her attempting to take her phone." Additionally, separate affidavits indicated to Judge Timmons that evidence Defendant McFadden gathered during his investigation revealed that both Plaintiffs assaulted Joey Green by "kick[ing] [him] several times about the body while he was in handcuffs." Even if the affidavits presented to Judge Timmons had specifically indicated that Plaintiffs were licensed and professional bail bondsmen, the undersigned finds that probable cause would still have existed for their arrest based on the information contained in the affidavits. *See Miller*, 475 F.3d at 628. More specifically, the undersigned finds the arrest warrants would still have been executed based on probable cause for the assault charges even if the affidavits had indicated the omitted information as indicated in the following revised paragraphs:

> On or about 10/27/2011 there's witnesses and evidence to prove the same that the Defendant, *a licensed and professional bail bondsman*, while at Patricks Domestic and Imports 1223 W. Evans St Florence SC in Florence County did assault the victim by grabbing her arm pulling her attempting to take her phone, this all took place during a verbal altercation about a payment for a bond for the victim's boyfriend. There were employees at the incident location who witnessed parts of the verbal altercation and assault. The Defendant has been identified to the exclusion of all others. This case has been investigated by the FCSO;

> On or about 10/27/2011 there's witnesses and evidence to prove the same that the Defendant, *a licensed and professional bail bondsman*, along with codefendant, *also a licensed and professional bail bondsman*, while at Patricks Domestic and Imports 1223 W. Evans St Florence SC in Florence County did kick the victim several times about the body while he was in handcuffs *when attempting to effectuate his arrest*. The defendant was assisting his co-defendant with a bond issue during this incident. This incident was witnessed by the victims girlfriend along with employees at the incident location. The Defendant has been identified to the exclusion of all others. This case has been investigated by the FCSO.

Based on the undersigned's finding that the arrest warrants would still have been executed against Plaintiffs had the "corrected" facts been made part of the affidavits, the undersigned finds that "no civil liability lies against the officer." *See Miller* 475 F.3d at 628.

Here, Plaintiffs do not allege and the facts as indicated in the affidavit do not demonstrate that Plaintiff Ham was attempting to arrest Ms. Bennett. Therefore, any touching of Ms. Bennett was unlawful because it was not being made during the course of a lawful arrest. With regard to Mr. Green, Plaintiffs maintain that in this instance they used a reasonable amount of force to make a lawful arrest, and therefore, no warrant should ever have been procured. However, the undersigned notes that though Plaintiffs maintain the ability to make lawful arrests under South Carolina law, according to the facts in the affidavit, Plaintiffs administered force upon Green after the arrest was complete. The facts concerning Mr. Green specifically indicate that Plaintiff kicked Mr. Green "while he was in handcuffs." Therefore, because it is reasonable to assume from the plain language in the affidavit that the arrest was complete, and it was no longer necessary or lawful to use force against the arrestee. Thus, there was probable cause to believe that Plaintiffs violated section 16-3-600(E)(1) of the South Carolina Code by kicking Mr. Green.

Based on the undersigned's finding that the arrest warrants would still have been executed had Plaintiffs' profession been indicated on the warrants, Defendant cannot be liable for false arrest. *See Baker*, 443 U.S. at 143–44; *Porterfield*, 156 F.3d at 568. Accordingly, because the facially valid warrant is premised on a finding of probable cause to arrest Plaintiffs for third-degree assault, the undersigned recommends granting Defendant's Motion for Summary Judgment concerning unlawful seizure, false arrest, and/or false imprisonment.

B. Probable Cause Negates False Arrest and Malicious Prosecution under 42 U.S.C. § 1983

While the undersigned contends that the above finding precludes any finding of liability because a facially valid arrest warrant provides sufficient probable cause, Defendant asserts additional arguments in support of his Motion for Summary Judgment. Defendant argues he cannot be held liable for false arrest and/or malicious prosecution because Plaintiffs' arrests were supported by probable cause. ECF No. 33-1 at 8. Specifically, Defendant argues "the unrefuted record reflects that [Defendant] McFadden interviewed multiple witnesses who implicated the Plaintiffs in the crimes that they were charged with." *Id.* at 9. Defendant argues he is entitled to summary judgment because no genuine issue of material fact exists concerning probable cause. *Id.* at 9-10.

Plaintiffs argue that whether probable cause existed for their arrests "is a material fact that is hotly disputed, [and] Plaintiffs have asserted sufficient facts to show that probable cause did not exist." ECF No. 35 at 9. Additionally, Plaintiffs maintain that their claim for malicious prosecution has been established. *Id.* at 10. Plaintiffs represent that "[d]uring the course of his brief investigation, Defendant McFadden claims he interviewed two alleged witnesses to the incident, Judy Johnson and Nicholas Schultz, who were both employees of the impound lot where the incident occurred. However, Nicholas Schultz states that he never spoke to Defendant McFadden or any other law enforcement officer regarding this incident." *Id.* at 10-11. Plaintiffs also call into question several of the investigative tactics used and assert that "Defendant McFadden's telephone interview of Judy Johnson and the alleged interview of Nicholas Schultz are insufficient to warrant probable cause." *Id.* at 11. Plaintiffs also insist that the use of force could not have been unlawful because "no injuries were sustained by either of the alleged victims and it is established that the victims were non-compliant with the arrest." *Id.* at 12.

Accordingly, Plaintiffs argue that based on the totality of the circumstances, probable cause did not exist. *Id.*

Probable cause exists if the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." *Porterfield,* 156 F.3d at 569 (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky,* 942 F.2d at 264. Probable cause will be found when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton,* 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992)). "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* A court's inquiry should be made based on

the information possessed by the officer at the time of the arrest that was then reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett,* 973 F.2d at 312. When a plaintiff alleges a lack of probable cause for an arrest, he "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown v. Gilmore,* 278 F.3d 362, 368 (4th Cir. 2002)

Aside from whether the warrants were facially valid, the threshold question is whether there was probable cause to arrest Plaintiffs for violations of section 16-3-600 of the South Carolina Code. The undersigned must examine the evidence presented to make the probable cause determination. Since filing this action the parties have engaged in discovery, and Defendant attached several key pieces of discovery to his Motion for Summary Judgment. To establish a § 1983 claim based on a Fourth Amendment violation for false arrest or imprisonment, a plaintiff must show that the seizure was effected without probable cause. *See Brown,* 278 F.3d at 367; *Rogers v. Pendleton,* 249 F.3d at 294; *Brooks v. City of Winston–Salem,* 85 F.3d at 183. Thus, there is no § 1983 claim for false arrest unless the officer lacked probable cause. *See Street v. Surdyka,* 492 F.2d at 372–73.

Undisputed evidence indicates that Defendant McFadden received a complaint from Martie Bennett on October 27, 2011. ECF No. 33-5 at 2-3. In Defendant McFadden's deposition, he testified that Ms. Bennett was upset and irate about a situation that happened with her boyfriend who was travelling through Florence, South Carolina. *Id.* at 3. According to McFadden's testimony, Ms. Bennett bonded her boyfriend out of jail after being referred to Plaintiff Ham's bonding service. *Id.* Defendant McFadden testified that while Ms. Bennett and her boyfriend were at Patrick's (an automotive business), Plaintiff Ham approached Ms. Bennett

and was "irate and upset saying he didn't get his money. . . ." *Id.* at 4. Ms. Bennett told Defendant McFadden that once she went inside the location, Joey Green was there with Charles Fuentes and Green was in handcuffs. *Id.* Defendant McFadden stated: "[t]he big argument came in is they were going to give her the money but she was saying they had Mr. Green's car at the time. She said she'd give them the money but they was keeping the vehicle because that wasn't part of the deal. . .The agreement was the $600 surety, not the car." *Id.* at 4-5. Defendant McFadden testified that Ms. Bennett said she told Mr. Green that "the other bondsman called her and said he could do it, and that's when Mr. Ham grabbed her arm. He grabbed her by her arm and was trying to snatch her phone from her, and eventually he did get her phone from her. After that, she yelled out and I guess that's when the employee heard her screaming." *Id.* at 5.

At this point, Defendant McFadden testified that Ms. Bennett told him that "they started kicking Mr. Greene." *Id.* at 6. Further, he indicated that Ms. Bennett reported that "[t]hey was kicking him and she was yelling for them to stop. He was yelling at them, 'Get your hands off my girl[.]'" *Id.* Defendant McFadden testified that when he spoke to the mechanic at Patrick's "he said he seen them kicking this guy. He was handcuffed, and they was kicking this guy and the girl was yelling and screaming." *Id.* Defendant McFadden testified that Ms. Bennett reported that "they pulled a gun" but it "ended up being a taser." *Id.*

Defendant McFadden testified that he also interviewed Joey Green at the Sheriff's Office during his investigation. *Id.* at 8. According to Defendant McFadden's testimony, Joey Green told him during the interview that when he and Ms. Bennett went to the location where his car had been towed "two big guys came in and [hand]cuffed him up. . . ." *Id.* at 9. Defendant McFadden testified that Mr. Green determined that they had no choice but to use Plaintiff Ham for the bond but that Mr. Green got into an argument with Plaintiff Ham about whether they

could confiscate his car. *Id.* According to Defendant McFadden's testimony, "that's when [Plaintiff] Ham grabbed this girl by the arm and [Green] began yelling, 'Get your hands off my girl,' and she began screaming and [Plaintiff Ham] grabbed the phone." *Id.* at 10. Further, after they exchanged words, "he said they began kicking him, stomping him with handcuffs on, and saying 'Get in the car,' and kicking him and kicking him, and he said, 'Don't give them the keys to the car[.]'" *Id.* at 10-11. When specifically questioned about whether Joey Green made a complaint about being physically injured, Defendant McFadden responded that he said: "Look at my pants where they was kicking me." *Id.* at 12-13. However, Defendant McFadden admitted that Joey Green did not need medical treatment. *Id.* at 13.

Defendant McFadden testified that he called Plaintiff Ham and informed him that a complaint was lodged against him after Martie Bennett made the complaint. *Id.* at 13-14. Specifically, Defendant McFadden testified: "I let him know that I'd had someone up there complaining about it, you know, using excessive force, kicking him when he was in handcuffs and all that kind of stuff." *Id.* at 14. Defendant McFadden reiterated that in her complaint, Martie Bennett told him that Plaintiff Ham had grabbed her wrist and snatched her phone. *Id.* at 14. Further, he testified that "she said that he didn't have a right to put her [sic] hands on her and grab her phone." *Id.* In regards to both Plaintiffs, Defendant McFadden testified that Martie Bennett said they were both kicking Mr. Green. *Id.* Additionally, Defendant McFadden testified that Mr. Green told him that both Plaintiffs kicked him. *Id.* at 14-15. Defendant McFadden testified that he only spoke with Plaintiff Ham and did not speak with Plaintiff Fuentes on the day Ms. Bennett lodged the complaint. *Id.* at 15.

Florence County Sheriff's Office Reports, also attached as exhibits to Defendant's Motion, corroborate Defendant McFadden's deposition testimony. ECF No. 33-2. One Report

Summary, ORI Number SC0210000, indicates that a "victim" spoke to Defendant McFadden regarding an altercation at Patrick's. *Id.* at 2. Specifically, the Report indicates:

> When she pulled up the subject John Ham approach her car using profanity and being very disorderly towards the victim about his money. The victim said she had the bank on the phone and put them on speaker so the subject could hear what the bank was saying. The victim said the subject Jon Ham asked her to come inside and she did and that's when she saw victim number two in the back of the location in handcuffs. Victim number one said she left and went to get the $600.00 to bring to the subject and when she returned the subject asked her once again to come on the inside and she did and victim number #2 was still in handcuffs. The victim said that the subject said that he was going off victim number two bond because he think the victim is a flight risk. Victim number one said at the time she called Cooper Bond Company to try and get another bondsman because the subject was talking about going off victim number 2's bond and at that time the subject grabbed her right hand that she had the phone in and tried to grab the phone with his other hand. At that time victim number #2 said to the subject get your hands off my girl and the subject told victim number two to shut up. According to victim number one she had Cooper Bond on speaker phone and he said that he might not be able to get the subject out and that when victim number two gave the subject the $600.00. Victim #1 said that Cooper Bond called back and said that they would be able to get victim number two out and at that time the subject started pushing and kicking victim number two to get him in their car. According to victim number one once victim number two was in the car he was able to open the door and ask about his money and the subject Jon Ham pulled out a black handgun and pointed it at victim #2. Victim number one asked to follow the subject to jail and he told her to find her own way. Victim number one did make it to law enforcement complex and that is when this officer was contacted and a report was filed and the victim also was able to speak to Investigator Thomas Mccaffaden (sic) on this matter.

*Id.* at 2.

Additionally, in an affidavit submitted to the court, Defendant McFadden attests that he interviewed Nicholas Schultz and Judy Johnson, both employees of Patrick's automotive service, during his investigation. ECF No. 33-3 ¶ 13. Further, Defendant McFadden avers that "[a]ccording to Mr. Schultz, an independent witness, he personally observed the Plaintiffs kicking Mr. Green and [Schultz] did not believe that such conduct was proper." *Id.* Defendant submitted parts of Nicholas Schulz's deposition testimony in support of their Motion for Summary Judgment. ECF No. 33-4. Mr. Schultz testified that on the day of the incident he was

working on a car and "heard two men hollering get out the car, get out the car, get out the car. I walked around the car and saw them pull the guy kicking and - - trying to pull him out the car." *Id.* at 3. When asked if both men were kicking him, Mr. Schultz responded, "they were both on top, trying to get him out the car." *Id.* Further, Mr. Schultz testified that he did not think Mr. Green was being treated properly because "[t]hey were kicking him, trying to get him out of the car." *Id.* at 6.

### i.     Probable Cause to Arrest for Assault of Martie Bennett

The undersigned finds that based on the knowledge of Defendant, probable cause existed to believe that Plaintiff Ham had committed the assault crime against Ms. Bennett for which he was charged. In this instance, there is no indication that Ms. Bennett was absconding from the state or violating conditions of a bail bond—rather, Ms. Bennett was never arrested in the state of South Carolina. Therefore, from the evidence Defendant gathered during his investigation, Plaintiff Ham did not have the right to touch Ms. Bennett in any way because he was not attempting to arrest her under the authority he had a bail bondsman. Therefore, any "offers or attempts to injure" Ms. Bennett were unlawful because they were not being made during the course of a lawful arrest and therefore were in violation of section 16-3-600(E)(1) of the South Carolina Code.

### ii.     Probable Cause to Arrest for Assault of Joey Green

According to multiple witnesses, including both victims and Mr. Schultz, evidence demonstrated that Plaintiffs administered force upon Mr. Green after the arrest was complete. Therefore, based on the facts and circumstances within Defendant's knowledge, it was sufficient to warrant a prudent person into believing that Plaintiffs had committed the assault offense because it was reasonable to believe that any force was no longer warranted or lawful once Mr.

Green was in handcuffs and secure. Accordingly, the undersigned finds that there was probable cause to believe that Plaintiffs violated section 16-3-600(E)(1) of the South Carolina Code by kicking Mr. Green once he was in handcuffs.

iii.     Other Arguments Concerning Probable Cause

Although Plaintiffs argue that lack of visible injuries on Mr. Green and Ms. Bennett indicate that an assault could not have occurred, the undersigned finds that actual injury is not a necessary component of third-degree assault. Pursuant to section 16-3-600(E)(1) of the South Carolina Code, an individual commits third-degree assault "if the person unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so." Under its plain reading, section 16-3-600(E)(1) indicates that an individual is guilty of third-degree assault for actually injuring another person or for *attempting* to injure another person with the present ability to do so. Here, the undersigned finds that with the investigation evidence he procured, Defendant McFadden had probable cause to arrest Plaintiffs for at least attempting to injure Mr. Green and Ms. Bennett.

Plaintiffs also emphatically argue that the investigation leading to their arrest was insufficient or inadequate. However, the undersigned notes that the evidence needed to establish probable cause to arrest is a lower standard than the evidence needed for a *conviction*. The Fourth Circuit has held that law enforcement officers are not required to conduct exhaustive investigations in order to establish probable cause. *See e.g., McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 418-19 (4th Cir. 2005) ("The fact that Livingston did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification.") (referencing *Wadkins v. Arnold,* 214 F.3d 535, 543 (4th Cir. 2000) ("The question before us is not whether [the officer] exhausted every potential

avenue of investigation."); *Torchinsky,* 942 F.2d at 264 ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer *might* have taken that *might* have shaken his belief in the existence of probable cause.")). In the *McKinney* case, the Fourth Circuit Court of Appeals reversed the district court's finding that probable cause was lacking for plaintiff's arrest because although he obtained an arrest warrant, the arresting law enforcement officer "did not visit the crime scene, did not interview anyone other than [the victim] and her mother, failed to attend the scheduled meeting with the school district's attorney, and failed to return the attorney's and school principal's calls." 431 F.3d at 418. Ultimately, the Fourth Circuit concluded that the failure to investigate did not negate probable cause for the arrest warrant based "primarily on the victim's identification of her attacker." *Id.* Therefore, based on the *McKinney* holding and other Fourth Circuit holdings, the undersigned finds that the investigation performed in this case presented evidence that was sufficient to "convince a person of reasonable caution" that an assault was committed. *See Wadkins v. Arnold*, 214 F.3d at 539; *Anderson v. Cass Cty., Mo.*, 367 F.3d 741 (8th Cir. 2004) (holding officers had probable cause to arrest bail bondsmen for assault "[g]iven all the circumstances known to the arresting officers," including the victim's statement).

The cognizable federal claims in Plaintiffs' Complaint under § 1983 include causes of action for false arrest, false imprisonment, and malicious prosecution. Based on the undersigned's finding that probable cause existed, Plaintiffs' causes of action for false arrest, false imprisonment, and malicious prosecution as Fourth Amendment violations under § 1983 fail as a matter of law. *See Porterfield*, 156 F.3d at 568; *Snider v. Seung Lee*, 584 F.3d 193, 202 (4th Cir. 2009) ("To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2)

the criminal proceeding terminated in the plaintiff's favor; (3) *the proceeding was not supported by probable cause*; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.") (emphasis added). Accordingly, the undersigned recommends granting Defendant's Motion for Summary Judgment and dismissing Plaintiffs' cause of action for a Fourth Amendment violation based on Defendant McFadden's probable cause for the arrest of Plaintiffs.

C.      Qualified Immunity

Defendant argues he is entitled to qualified immunity because Plaintiffs' allegations fail to demonstrate that Defendant violated any of Plaintiffs' constitutional rights. ECF No. 33-1 at 10. However, Defendant maintains that to the extent his actions were unconstitutional, he is still entitled to qualified immunity because (1) at the time of the alleged violation, the right was not clearly established; and (2) a reasonable person would not have known that doing what the undisputed record reflects would violate the Plaintiff's rights." *Id.* at 10-12.

Plaintiffs maintain Defendant is not entitled to qualified immunity because Defendant's conduct violated clearly established constitutional rights of Plaintiffs. ECF No. 35 at 13. Further Plaintiffs argue they have alleged sufficient facts to indicate "they were unlawfully deprived of their constitutional liberties when they were falsely arrested without probable cause." *Id.* Further, they contend that "[b]ecause the arrest warrants were obtained through crimes of moral turpitude, the Defendant McFadden could not have reasonably believed their actions to be lawful." *Id.* Based on the above reasoning, the undersigned agrees with Defendant.

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. *See McKinney*, 431 F.3d at 419 (holding an officer "would nonetheless be entitled to qualified immunity because the absence of probable cause would not have been evident to an objectively reasonable officer in these circumstances [and] [a] reasonable officer would not second guess these determinations [of a neutral and detached magistrate] unless probable cause was plainly lacking, which it was not"). Defendant did not transgress any statutory or constitutional rights of Plaintiffs that he was aware of in the exercise of his respective professional judgments. Thus, to the extent the district judge

finds that a constitutional violation occurred, the undersigned recommends that Defendant be granted qualified immunity.[9]

E.     Eleventh Amendment Immunity

Defendant maintains that he is immune from suit by virtue of the Eleventh Amendment to the United States Constitution and is not a "person" subject to suit under 42 U.S.C. § 1983. ECF No. 33-1 at 4. The undersigned agrees.[10]

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendant was an agent or employee of the

---

[9] Defendant also makes the following argument in section VI of the analysis: "summary dismissal is appropriate, since federal law precludes recovery for mental or emotional injuries without a prior showing of physical injury." ECF No. 33-1 at 12-14. In argument VII, Defendant maintains: "Summary dismissal is appropriate, since Plaintiffs cannot show that the Defendants' alleged conduct both factually and proximately cause their alleged injuries." *Id.* at 14. The undersigned recommends granting summary judgment based on the analysis in sections III. (A.) through III (C.) above. Defendant also argues that summary dismissal is appropriate because Plaintiffs cannot establish any failure-to-train claim pursuant to 42 U.S.C. § 1983. ECF No. 33-1 at 15. There is no need to address the failure-to-train argument because it was asserted against previous Defendant Florence County Sheriff's Department. Additionally, Defendants argue that summary dismissal is appropriate because Plaintiffs' due process rights were not violated. *Id.* at 17. Based on the undersigned's above recommendations, particularly the finding concerning probable cause to arrest Plaintiffs, it is unnecessary to address the merits of these arguments concerning Plaintiffs' § 1983 claims.

[10] Defendant maintains that "Defendants cannot be held liable under 42 U.S.C. § 1983 on a Respondeat Superior Basis." ECF No. 33-1 at 5. This argument is now moot because Defendant McFadden is the only remaining Defendant.

State of South Carolina when acting in his official capacity, he is not a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, Defendant, in his official capacity, is immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendant in his official capacity be dismissed.

F.    State Law Claims for Conspiracy and IIED

In addition to their § 1983 claims, Plaintiffs bring separate state-law claims for conspiracy and IIED. ECF No. 1. If the court accepts this Report and Recommendation, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiffs' § 1983 claims, Plaintiffs' sole remaining causes of action are based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Addison v. Chesterfield Cty. Sheriff Dep't*, No. 4:12-CV-02543-RBH, 2013 WL 6799223, at *3 (D.S.C. Dec. 20, 2013)

(declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to § 1983 claim); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (same in Title VII matter).

Here, the undersigned recommends the court decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismiss those claims without prejudice to them being filed in state court, thus ending this action.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 33, be **granted and this case be dismissed**.

IT IS SO RECOMMENDED.

June 14, 2016                                        Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**